chargeable; and to enable Leonard Hook to realize one thousand dollars out of these notes, upon which there was nothing due—for he had paid nothing for them, nor upon any of the accommodation notes which he had indorsed for Crawford. To this fraud Daniel Hook was a party; and the law will not protect him in it by now allowing him, if the notes were in his possession, to prove them against the estate of Leonard Hook. But the notes are not now in his possession. He has sold and assigned them to Bowley, the claimant. Does he stand any better in this particular than Daniel Hook? I think not. It is a very suspicious circumstance that he received these notes of Daniel Hook for two lots of land worth eight hundred or one thousand dollars, and that he has never deeded the land either to Hook or any one for his benefit. It looks as though he was seeking to enable Hook to realize upon these notes through him, and that he was making himself a party to the fraudulent transfer of the same.

Again, he must be chargeable with notice of all the infirmities of the notes. All but one were overdue and dishonored when he took them. And as to that one, he received it under such circumstances as should have put him on his inquiry about it. If he had inquired he would have learned that Leonard Hook was insolvent, and that the notes had been passed to Daniel Hook for a very inadequate consideration; and in fraud of Crawford's estate, to enable Leonard Hook to realize something upon them. He can stand, then, no better than Daniel Hook. They are really in his hands with knowledge of all the material facts in regard to them, and so far he has paid nothing for them. He agreed to convey two lots of land for them, but never did it. The delivery of them to him was really without consideration. To allow him to prove and recover anything upon them, even against Leonard Hook's estate, would be to lend the aid of the court to what was evidently a fraudulent transaction; and this cannot be done, even to allow him to prove for the amount which he agreed to pay. They cannot, in the opinion of the court, be proved for any sum. "Fraud corrupts and destroys the whole debt." "Every party to proceedings under the bankrupt law, must be held to the utmost good faith; and he who attempts a fraud cannot, if discovered, complain when he is made to abide the legal consequences of his acts." In re Elder [Case No. 4,326].

HOOK (ROBINSON v.). See Case No. 11,956.

HOOK (UNITED STATES v.). See Case No. 15,387.

## Case No. 6,673.

### In re HOOLE.

[See 3 Fed. 496.]

12 FED. CAS.—30

HOOPER (FELCH v.). See Cases Nos. 4,717 and 4,718.

## Case No. 6,674.

HOOPER et al. v. FIFTY-ONE CASKS OF BRANDY.

[2 Ware (Dav. 370) 371;[1] 6 N. Y. Leg. Obs. 302.]

District Court, D. Maine. Dec. Term, 1848.

CUSTOMS—SEIZURE—SHARE OF FORFEITURE—INSPECTOR—RIGHTS OF—EMOLUMENTS.

1. Inspectors of the customs are public officers, and not the mere servants and agents of the collector.

2. Where a seizure is made by a collector under the collection act, March 2, 1799 [1 Stat. 627], in pursuance of information given by an inspector of the customs, the inspector is entitled to the informer's share of the forfeiture.

[Cited in Fifty Thousand Cigars, Case No. 4,782; U. S. v. George, Id. 15,197; U. S. v. One Hundred Barrels of Distilled Spirits, Id. 15,946; Four Cutting Machines, Id. 4,987; U. S. v. Chassell, Id. 14,789.]

3. No officer of the customs is debarred from receiving a distributive share of fines, penalties, and forfeitures, by the act of February 11, 1846, c. 7 [9 Stat. 3], allowed by previous laws, in consequence of having received his maximum of compensation allowed by law.

[Cited in Sprague v. West, Case No. 13,255.]

4. What is received by the officers of the customs for forfeitures, constitutes no part of the emoluments to which the limitation of the maximum is applied.

This was a petition of John K. Hooper and Nathaniel Shaw, claiming the informer's share in the proceeds of the sale of fifty-one casks of brandy, seized by the collector of Portland, and condemned as forfeited to the United States. It is alleged in the petition that, on the 27th of January, they found the brandy secreted in various warehouses in town, and suspecting it to have been illicitly imported took it into their possession, and on the same day gave the collector information; and that in pursuance of the information the seizure was made, and such proceedings were thereupon had, that the brandy was condemned as forfeited, and sold, and the proceeds paid into the registry, for having been landed without a permit, in violation of the 50th section of the collection law of March, 1799. The answer of the collector and surveyor, admits the facts stated in the petition, but denies that the petitioners are entitled to the informer's share, because they were at the time inspectors of the revenue, in the employment of the United States, and had received the full amount of the maximum of their compensation allowed by law. To this answer the petitioners put in a general demurrer.

Mr. Haines, for petitioner.

S. J. Anderson, for respondents.

WARE, District Judge. The proceeds of the forfeiture having been paid into the reg-

----

[1] [Reported by Edward H. Daveis, Esq.]